IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHELE R. MCMILLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-131-SLR |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

John S. Grady, Esquire of Grady & Hampton LLC, Dover, Delaware. Counsel for Plaintiff.

Colm F. Connolly, United States Attorney, United States Attorney's Office, Wilmington, Delaware, and Joyce M.J. Gordon, Special Assistant United States Attorney, Social Security Administration, Philadelphia, Pennsylvania. Counsel for Defendant. Of Counsel: Donna L. Calvert, Regional Chief Counsel, Social Security Administration, Philadelphia, Pennsylvania.

**MEMORANDUM OPINION**

Dated: August |ᴅ , 2006
Wilmington, Delaware

**ROBINSON, Chief Judge**

## I.   INTRODUCTION

Plaintiff Michele McMillan ("plaintiff") filed this action

against defendant Jo Anne Barnhart, Commissioner of Social

Security ("defendant"), on September 29, 2005.  (D.I. 2)

Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g),

of a decision by defendant denying her claim for supplemental

security income and disability insurance benefits under Titles II

and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-

1383f.  Currently before the court are the parties' cross-motions

for summary judgment.  (D.I. 13, 17)  For the reasons stated

below, the court will deny defendant's motion, deny plaintiff's

motion, and remand for further proceedings.

## II.   BACKGROUND

### A.   Procedural Background

On July 28, 2003, plaintiff filed an application for

supplemental security income and disability insurance benefits.

(D.I. 11 at 88, 266)  Plaintiff claimed back injury and disc

problems from a motor vehicle accident that occurred on December

11, 2002.  (Id.)  Plaintiff's claim was denied both initially and

upon reconsideration because it was determined that her condition

was not severe enough to keep her from working.  (Id. at 72, 78)

Plaintiff requested and subsequently received a hearing before an

administrative law judge ("ALJ"), held on September 9, 2004.

(Id. at 30)  On September 19, 2004, the ALJ denied plaintiff's

claim.  (Id. at 11)  The ALJ found the following:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
3. The claimant's lumbar degenerative disc disease is a "severe" impairment, based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).
4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
6. The claimant has the following residual functional capacity: sedentary.
7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).
8. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).
9. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).
10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).
11. The claimant has the residual functional capacity to perform sedentary exertional, unskilled work, lifting and carrying ten pounds, standing or walking two hours in an eight-hour day, sitting six hours in an eight-hour day, with limited pushing and pulling using lower extremities, occasional postural activities with no climbing ladders, ropes, or scaffolding, and avoiding extremes of cold, vibrations, and hazards such as machinery and heights, limited to unskilled work (20 CFR §§ 404.1567 and 416.967).

2

> 12. Although the claimant's exertional limitations do
>     not allow her to perform the full range of
>     sedentary work, using Medical-Vocational Rule
>     201.29 as a framework for decision-making, there
>     are a significant number of jobs in the national
>     economy that she could perform.
> 13. The claimant was not under a "disability," as
>     defined in the Social Security Act, at any time
>     through the date of this decision (20 CFR §§
>     404.1520(g) and 416.920(g)).

(Id. at 18-19)  On January 28, 2005, the Appeals Council declined

to review the ALJ's decision, and her decision became the final

decision of the Commissioner.  (Id. at 4)

## B.    Plaintiff's Written Social Security Application

On July 28, 2003, plaintiff submitted an application for

Disability Insurance Benefits and for Supplemental Security

Insurance payments in which she indicated she had been unable to

work since December 11, 2002.  (Id. at 88, 266)  On September 4,

2003, plaintiff submitted an Adult Injury and Disability Report

and reported that she was unable to work because her back injury

and disc problems precluded her from sitting or standing for more

than thirty minutes without moving.  (Id. at 96)

Plaintiff completed a Disability Daily Activities

questionnaire on September 11, 2003.  (Id. at 107)  Plaintiff

stated she is unable to do household chores because she is unable

to stand very long or bend to sort laundry.  (Id. at 108)  She is

able to drive to the grocery store but must lean on a cart or use

a motorized cart while shopping.  (Id. at 109)  She has

persistent back pain and is fatigued from not sleeping or resting

3

at night.  (Id. at 110, 112)  Her previous job will not allow her
to return to work.  Plaintiff has not tried to perform other work
due to her doctor's orders, her constant pain, and the risk that
"bending or standing for long could [cause] damage."  (Id. at
113)  On a September 10, 2003 pain questionnaire, plaintiff
indicated that she was in pain 80-100% of the time and she
"frequently" stops what she is doing because of the pain.  (Id.
at 124)  Her pain ranges from "horrible" to "excruciating," and
she suffers "frequent" fatigue, depression, and frustration
because of the pain.  (Id. at 124-45)

## C.   Facts Evinced at the Administrative Law Hearing

Plaintiff is a 34 year-old female who is five foot eight
inches tall and weighs about 190 pounds.  (Id. at 34)  Plaintiff
has eleven years of formal education and additional training in
child care.  (Id. at 35-36)  She has formerly worked as an office
assistant, assembly line worker, cashier, and fast food worker.
(Id. at 37-40)  At the time of the hearing, plaintiff was seeing
her doctor once a month for pain medication and was taking
Ultracet.  (Id. at 42-43)  She testified that her pain was about
a seven, on a scale of one to ten, when her medication was
working, but her medication also causes sleepiness.  (Id. at 44-
45)  She also testified that she has back pain "every day, all
day," and it has worsened since her December 2003 operation.
(Id. at 44)  Pain management in July 2004, two months prior to

4

the hearing, did not help plaintiff, and plaintiff had an MRI the week of the hearing because of the increase in her pain. (Id. at 53-54)

When asked about her physical abilities, plaintiff testified she could walk about ten minutes without stopping. (Id. at 45) When needing to stand, she usually leans against a wall and is able to stand without leaning against a wall for "maybe five, ten minutes at the most." (Id. at 45-46) The only lifting she does is picking up bread and eggs, and she said she is unable to bend, kneel, or squat. (Id. at 46) Plaintiff is able to sit "a half hour at the most" when she has a pillow behind her back. (Id.) She said that she is not able to sit for very long because her legs will hurt and she must have her legs propped up to prevent them from getting numb. (Id. at 52) At a point more than thirty minutes into the 102-minute hearing, plaintiff testified that her legs and back hurt and she was using her purse as a pillow. (Id. at 60)

James Harris, plaintiff's boyfriend, also testified at the hearing. (Id. at 56) Harris has lived with plaintiff for nine years and receives disability because of his severe asthma. (Id.) He testified that plaintiff needs to "roll over off the bed to the floor" to get up in the morning. (Id. at 57) He also said that plaintiff has pain within twenty to thirty minutes of sitting down, at which point she begins "tossing and turning

5

trying to find a comfortable position" and then takes her pills
to relieve the pain.  (Id. at 57, 59)  He agreed that plaintiff
seems to be in more pain after her surgery.  (Id. at 58)

## D.   Vocational Evidence

During the hearing, the ALJ called a vocational expert,
Arthur M. Brown.  (Id. at 60)  The ALJ asked the vocational
expert the hypothetical question:

> Now, if we were to consider a hypothetical individual
> who is about the claimant's stated age at onset of 32-
> years.  This individual has an 11th grade limited –
> a[n] 11th grade education with the work history that
> you have just cited to me.  There are certain
> underlying limitations and these would limit this
> individual to working at a sedentary level of exertion.
> Walking, standing about two hours in an eight-hour
> workday.  Sitting about six . . . and this person would
> need to have the option to sit or stand.  There would
> be limited pushing and pulling with the lower
> extremities.  Under the posturals there would be never
> climbing a ladder, a rope or a scaffold.  All the other
> posturals would be occasional.  There would be
> environmental limitations, avoiding exposure to,
> concentrated exposure to extreme cold, vibrations and
> hazards.  Finally, although this person has a semi-
> skilled work background, this person would be limited
> to a[n] unskilled work.  With these limitations, would
> there be any of the work that the claimant had done,
> the past relevant work that this person might be able
> to do in your opinion?

(Id. at 62-63)  The vocational expert replied that there would be
no past relevant work available, but other positions would be
available, such as account clerk, ticket seller, or assembler.
(Id. at 63-64)

Upon examination by plaintiff's attorney, the vocational
expert explained that the ALJ's hypothetical included limitations

6

resulting from pain only to the extent of "the pain that the
Judge assessed." (Id. at 66) The vocational expert continued by
testifying that were plaintiff's testimony deemed credible, there
would be no work available for her because of her need to
frequently lie down during the day on an unscheduled basis
because of her pain. (Id. at 67) Plaintiff testified that she
laid down more than two hours per day, and the vocational expert
testified that a person who misses more than two hours of work
daily on an unscheduled basis would not be able to maintain
competitive work. (Id.) The expert noted that a person who
takes three or four unscheduled daily breaks in addition to the
three scheduled daily breaks offered by most employers would not
be employable. (Id. at 68) The ALJ's hypothetical included
nothing about a person lying down to relieve pain or "putting a
pillow behind your back and putting your legs up;" the vocation
expert testified that including such facts "wouldn't probably
effect" his responses to the hypothetical as posed. (Id.)

## E. Medical Evidence

Plaintiff was injured in a motor vehicle accident on
December 11, 2002. (Id. at 141) She was first seen for low back
pain and stiffness by Dr. R. P. DuShuttle, an orthopedic surgeon,
on December 16, 2002. (Id. at 261, 280) He diagnosed a
lumbosacral strain with radiculopathy and prescribed pain
medication and physical therapy. (Id. at 261) He advised her

7

against working until she had a re-evaluation on January 6, 2003. (Id.) On January 6, 2003, Dr. DuShuttle ordered an MRI because of plaintiff's worsening pain. (Id. at 256) He also prescribed two additional weeks of physical therapy and two additional weeks of no work. (Id. at 257-58) On January 21, 2003, Dr. DuShuttle used the MRI results to diagnose a disc herniation at L5-S1 and ordered a lumbar CT scan, which showed a disc bulge at L5-S1 with possible effects on the neural elements. (Id. at 212, 251, 255) He also prescribed three additional weeks of physical therapy and three additional weeks of no work. (Id. at 253-55) On February 11, 2003 and March 4, 2003, plaintiff's symptoms were the same, and she was prescribed more physical therapy and advised to stay off work until her appointment on April 1, 2003. (Id. at 245-250)

Although plaintiff reported being about 20% better as of April 1, 2003, she decided to proceed with epidural injections and was advised to continue physical therapy and to stay home from work through the injections. (Id. at 242-44) The first epidural injection was on May 15, 2003 but the second injection was never given because the first one was unsuccessful. (Id. at 236, 240) She continued physical therapy, was kept off work, and was re-evaluated again on June 18, 2003. (Id. at 233-37) Around June 18, she stopped physical therapy and stopped taking medication because neither was helping, but Dr. DuShuttle advised

8

her to continue to stay home from work for four more weeks.[1]
(Id. at 233)

Dr. DuShuttle also recommended that plaintiff get a second
opinion. On June 30, 2003 and July 14, 2003, plaintiff was seen
by Dr. R.S. Venkataramana, a spinal and neurosurgeon. (Id. at
196) Dr. Venkataramana concurred with the medical diagnosis of
Dr. DuShuttle and told plaintiff that she must endure her severe
pain or have surgery. (Id.) However, he also said at that time
that plaintiff "can start doing light work,[2] without bending or
lifting anything more than 10 pounds at a time and also at work
[plaintiff] should be able to change position from sitting to
standing and vice versa as needed."[3] (Id. at 197)

On July 16, 2003, plaintiff returned to Dr. DuShuttle and
was advised that he could do nothing more unless she opted to
have the surgery. (Id. at 232) He advised her that her pain

---

[1]The physical therapy records from December 18, 2002 through
June 18, 2003 match relatively closely with Dr. DuShuttle's notes
regarding plaintiff's lack of substantial improvements and
continued pain; however the June 18 physical therapy record
reports a 0% improvement, while Dr. DuShuttle's notes from the
same day report a 20% improvement. (Id. at 150-192)

[2]"Light work" involves lifting up to twenty pounds, whereas
"sedentary work" involves lifting no more than ten pounds at a
time. See 20 C.F.R. § 404.1567.

[3]In a September 2003 dictation, Dr. Venkataramana said
similarly that plaintiff "can do work-related activities such as
sitting, standing, and walking, provided she can change positions
at will. She should limit the carrying or lifting of anything
heavier than 10-15 pounds." (Id. at 195)

9

could worsen with time, but a "no work note" was not given at this appointment. (Id.) On November 24, 2003, plaintiff returned to Dr. DuShuttle because her pain was worse and she decided to have surgery, which was scheduled for December 8, 2003. (Id. at 213, 231) Her next "no work note" was given at her December 16, 2003 post-operation appointment and was meant only to last until her re-evaluation on December 30, 2003. (Id. at 228) At this re-evaluation appointment, she told Dr. DuShuttle that her leg and buttocks pain was gone and her lower back was improving daily. (Id. at 227) She was advised to rest but no "no work note" was given to plaintiff. (Id.) Plaintiff had another examination on January 13, 2004, but the record does not indicate that she received another "no work note" from Dr. DuShuttle at this time. (Id. at 226)

In February 2004, Dr. John Kramer, a state agency physician evaluated the record evidence for a Physical Residual Functional Capacity Assessment. (Id. at 216) He concluded that plaintiff could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently, stand and/or walk for about two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (Id.) He concluded plaintiff was able to do light work and had a good prognosis, noting that surgery was only two months prior to his report. (Id. at 222) Dr. Kramer also concluded that plaintiff's complaints of pain were "partially"

10

consistent with the expected severity, and he noted that she had
been able to sit through her two-hour July 2003 interview and
then walk without difficulty after some assistance getting out of
her chair. (Id. at 105, 220, 222)

In an April 2004 physician's statement, which was submitted
to the ALJ on September 7, 2004, Dr. DuShuttle made the following
statements:

> 13. In my opinion, [plaintiff] would be unable to do
> any kind of work on a regular 40 hour per week basis,
> **at this time.**
> 14. The pain in her back would prevent her from any
> kind of sedentary job which requires either [sic]
> sitting at a desk, **at present time.**
> 15. I do not believe she could sustain any kind of job
> **at the present time** even if she was permitted to get up
> and walk around once in awhile. The nature of her
> injury would require her to be off of her feet for
> several hours per day.
> 16. In my opinion, [plaintiff] has been unable to work
> since the time of her accident on December 8, 2002, and
> continues to be unable to do any kind of work, **at
> present time.**[4]

(Id. at 264) The only other medical evidence in the record from
Dr. DuShuttle after January 13, 2004 is a one month "no work
note" dated June 10, 2004.[5] (Id. at 224) The "no work note"
also mentioned a re-evaluation on July 9, 2004, but no records of
this exam are in evidence. (Id.)

---

[4]The bolded phrases are handwritten on the otherwise typed
form.

[5]Dr. DuShuttle also filled out a Delaware Health and Social
Services form the same day, stating that plaintiff was unable to
work for three months. (Id. at 225)

## III. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive," and the court will set aside the Commissioner's denial of plaintiff's claim only if it is "unsupported by substantial evidence."  42 U.S.C. § 405(g) (2002); 5 U.S.C. § 706(2)(E) (1999); see Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  As the Supreme Court has held,

> "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Accordingly, it "must do more than create a suspicion of the existence of the fact to be established . . . . It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939)).

The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Fed. R. Civ. P. 56:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
> Petitioners suggest, and we agree, that this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under

12

> the governing law, there can be but one reasonable
> conclusion as to the verdict.  If reasonable minds
> could differ as to the import of the evidence, however,
> a verdict should not be directed.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)

(internal citations omitted).  Thus, in the context of judicial

review under § 405(g),

> [a] single piece of evidence will not satisfy the
> substantiality test if the [Commissioner] ignores, or
> fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is
> overwhelmed by other evidence — particularly certain
> types of evidence (e.g., that offered by treating
> physicians) — or if it really constitutes not evidence
> but mere conclusion.

Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986) (quoting

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  Where, for

example, the countervailing evidence consists primarily of the

claimant's subjective complaints of disabling pain, the

Commissioner "must consider the subjective pain and specify his

reasons for rejecting these claims and support his conclusion

with medical evidence in the record."  Matullo v. Bowen, 926 F.2d

240, 245 (3d Cir. 1990).

## IV.  DISCUSSION

### A.  Disability Determination Process

Title II of the Social Security Act ("Act"), 42 U.S.C. §

423(a)(1)(D), as amended, "provides for the payment of insurance

benefits to persons who have contributed to the program and who

suffer from a physical or mental disability."  Bowen v. Yuckert,

13

482 U.S. 137, 140 (1987). Title XVI of the Act, 42 U.S.C. §
1382(a), "provides for the payment of disability benefits to
indigent persons under the Supplemental Security Income (SSI)
Program." Id. Both titles of the Act define a disability as the
"inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A) (2002).

In Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999), the Third
Circuit outlined the applicable statutory and regulatory process
for determining whether a disability exists:

> In order to establish a disability under the
> Social Security Act, a claimant must demonstrate there
> is some "medically determinable basis for an impairment
> that prevents him from engaging in any 'substantial
> gainful activity' for a statutory twelve-month period."
> A claimant is considered unable to engage in any
> substantial activity "only if his physical or mental
> impairment or impairments are of such severity that he
> is not only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy."
>
>     The Social Security Administration has promulgated
> regulations incorporating a sequential evaluation
> process for determining whether a claimant is under a
> disability. In step one, the Commissioner must
> determine whether the claimant is currently engaging in
> substantial gainful activity. If a claimant is found
> to be engaged in substantial activity, the disability
> claim will be denied. In step two, the Commissioner
> must determine whether the claimant is suffering from a
> severe impairment. If the claimant fails to show that

14

her impairments are "severe", she is ineligible for
disability benefits.

In step three, the Commissioner compares the
medical evidence of the claimant's impairment to a list
of impairments presumed severe enough to preclude any
gainful work. If a claimant does not suffer from a
listed impairment or its equivalent, the analysis
proceeds to steps four and five. Step four requires
the ALJ to consider whether the claimant retains the
residual functional capacity to perform her past
relevant work. The claimant bears the burden of
demonstrating an inability to return to her past
relevant work.

If the claimant is unable to resume her former
occupation, the evaluation moves to the final step. At
this stage, the burden of production shifts to the
Commissioner, who must demonstrate the claimant is
capable of performing other available work in order to
deny a claim of disability. The ALJ must show there
are other jobs existing in significant numbers in the
national economy which the claimant can perform,
consistent with her medical impairments, age,
education, past work experience, and residual
functional capacity. The ALJ must analyze the
cumulative effect of all the claimant's impairments in
determining whether she is capable of performing work
and is not disabled. The ALJ will often seek the
assistance of a vocational expert at this fifth step.

Id. at 427-28 (internal citations omitted). If the ALJ finds

that a claimant is disabled or not disabled at any point in the

sequence, review does not proceed to the next step. See 20

C.F.R. § 404.1520(a) (2002).

### B.  Application of the Five-Step Test

In the present case, the first four steps of the five-part

test to determine whether a person is disabled are not at issue:

(1) Plaintiff has not engaged in substantial gainful activity

since December 2002; (2) Plaintiff's lumbar degenerative disc

15

disease is a "severe" impairment; (3) Plaintiff's impairment does not equal one of the listed impairments; and (4) Plaintiff is unable to perform any of her past relevant work. Plaintiff contests the ALJ's finding on the fifth step that plaintiff's medical impairments do not preclude her from performing work in the national economy. Specifically, plaintiff argues that the ALJ erroneously found plaintiff's testimony to be not credible, that the ALJ erroneously rejected the opinion of Dr. DuShuttle, and that the ALJ misused the vocational expert's testimony in determining plaintiff is capable of performing sedentary work. (D.I. 13)

## C. Credibility Determinations

The vocational expert testified that plaintiff could not perform work in the national economy if the pain limitations from plaintiff's testimony were credited and included in the hypothetical. (D.I. 11 at 67) In evaluating the credibility of plaintiff's testimony, the ALJ concluded that

the claimant has underlying medically determinable impairments that could reasonably be expected to result in some of the symptoms as alleged. The [ALJ] has reservations however as to whether [plaintiff]'s assertions concerning her impairments, and their impact on her condition, can be considered fully credible. The record fails to provide any objective medical evidence that [plaintiff]'s impairments are as severe as her hearing testimony indicates. The record fails to show [plaintiff] requiring any hospitalizations, other than for corrective surgery, significant active treatment or significant office care other than for limited routine maintenance, and there have been no significant increases or changes in prescribed

medications reflective of an uncontrolled condition.  Her
activities of daily living are inconsistent with the level
of work related impairment alleged.[6]

(D.I. 11 at 16)  The Third Circuit has set the following standard

for when an ALJ is confronted with subjective complaints of pain:

(1) that subjective complaints of pain be seriously
considered, even where not fully confirmed by objective
medical evidence; (2) that subjective pain may support a
claim for disability benefits and may be disabling; (3) that
where such complaints are supported by medical evidence,
they should be given great weight; and (4) that where a
claimant's testimony as to pain is reasonably supported by
medical evidence, the ALJ may not discount claimant's pain
without contrary medical evidence.

Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984) (citations

and quotations omitted).

The ALJ correctly noted the deficiencies in the record, in

particular the lack of objective medical evidence.  The record

for the case contains over 100 pages of plaintiff's medical

records, including those from Dr. DuShuttle, for what seems to be

all of plaintiff's appointments through January 13, 2004.  Dr.

DuShuttle's January 13 records indicate that plaintiff would be

re-evaluated around January 27, 2004 and, at the September 9,

2004 administrative hearing, plaintiff testified that she visits

Dr. DuShuttle once a month for medication.  (D.I. 11 at 42, 224)

---

[6]The ALJ partially rejected plaintiff's subjective pain
testimony based on her apparent daily activities and found
plaintiff's boyfriend's testimony regarding plaintiff's daily
activities to be not credible.  However, plaintiff's credibility
must be evaluated in light of the medical evidence.

17

However, there are only five pages of documents from Dr.
DuShutttle during 2004.[7]

The record does not contain Dr. DuShuttle's notes from any
of plaintiff's appointments after January 13, 2004, and the few
2004 documents included from Dr. DuShuttle contain several
inconsistencies and ambiguities.  His April Physician's Statement
is mostly typed but he repeatedly qualified the typed statements
with the handwritten phrase "at present time."[8]  (Id. at 264-65)
The Statement also says that plaintiff has been unable to work
since her accident, but Dr. DuShuttle's own medical records do
not support this assertion.  He repeatedly prescribed "no work
notes" for up to a month at a time, but his 2003 records include
several months without a "no work note."  Additionally, the "no
work note" dated June 10 is for one month, whereas Dr.
DuShuttle's Medical Certification form from the same day
specifies that plaintiff was unable to work for the following
three months.  (Id. at 224-25)

_____

[7]These documents include notes from plaintiff's January 13
appointment, an April 18 Physician's Statement, a June 10 one-
month "no work note" indicating plaintiff had a July 9
appointment, and a June 10 Medical Certification.  (D.I. 11 at
224-26, 263-64)

[8]It is also unclear why plaintiff submitted an April
document in September when plaintiff was under her doctor's
continued care for the intervening months.

18

Despite the absence of objective medical evidence supporting plaintiff's subjective pain testimony, there is no objective medical evidence contrary to her claims. "[T]he ALJ may not discount claimant's pain without contrary medical evidence." Green, 749 F.2d at 1068. The ALJ at bar uses the lack of evidence of significant aggressive treatment as a basis for discrediting plaintiff. (D.I. 11 at 16) However, in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), the Third Circuit held that an ALJ could not discredit a claimant's subjective complaints of pain because he received only conservative treatment. Id. at 266 n.9. "Once adjudicators determine that the individual has an impairment which is reasonably expected to produce some pain, they must consider all of the evidence relevant to the individual's allegations of pain, even if the alleged pain is more severe or persistent than would be expected." Id. (quoting Evaluation of Symptoms, Including Pain, 56 Fed. Reg. 57,932 (1991), which interprets regulations regarding the evaluation of symptoms including pain, 20 C.F.R. § 404.1529). All of the record evidence indicates plaintiff has a severe medical problem with her back that is reasonably expected to produce pain.

The case is remanded because the ALJ's finding that plaintiff's testimony was not credible is not supported by substantial evidence. On remand, plaintiff has the opportunity to submit additional medical evidence regarding her current

condition, including the objective results of her recent MRI exam
and more medical evidence regarding the side effects and
necessity of her pain killer prescriptions. This evidence will
better assist the ALJ in her credibility determination, and new
objective medical evidence will also enable the ALJ to properly
evaluate the opinion of Dr. DuShuttle.

## V.   CONCLUSION

For the reasons stated, the court denies plaintiff's motion
for summary judgment and denies defendant's cross-motion for
summary judgment. The case is remanded to the defendant for
further proceedings consistent with this memorandum opinion.